John R. KIRBY, Plaintiff,

v.

**ILLINOIS STATE ELECTORAL BOARD,** Otto Kerner, as Governor of the State of Illinois and Chairman of the State Electoral Board, et al., Defendants.

Lawrence A. KUSEK, Plaintiff,

v.

Otto KERNER, as Governor of the State of Illinois and Chairman of the State Electoral Board, et al., Defendants.

Nos. 65 C 75, 65 C 81.

United States District Court
N. D. Illinois, E. D.
Oct. 13, 1965.

Order Nov. 29, 1965.

Judgment Dec. 8, 1965.

Raymond A. Bolden, Joliet, Ill., for plaintiff Kirby.

William G. Clark, Atty. Gen., of Illinois, 1st Asst. Atty. Gen., Richard E. Friedman, Kirkland, Ellis, Hodson, Chaffetz & Masters, Don H. Reuben, Lawrence Gunnels, Chicago, Ill., for defendants Illinois State Electoral Board and Otto Kerner.

Lawrence A. Kusek, pro se, Chicago, Ill., and Raymond A. Bolden, Joliet, Ill., for plaintiff Kusek.

Before CASTLE Circuit Judge, CAMPBELL, Chief Judge and DECKER, District Judge.

CAMPBELL, Chief Judge.

On September 10, 1965 the Supreme Court of Illinois in People ex rel. Scott v. Kerner et al., 32 Ill.2d 539, 208 N.E. 2d 561, by appropriate order afforded the two opposing political factions of the State Electoral Board opportunity to settle in an orderly fashion the Illinois congressional reapportionment controversy. Thereupon, with the approval of the Illinois Supreme Court and of my brethren on the panel of this Court in the above captioned cases, I requested counsel for the opposing factions to confer with me in pre-trial conference pursuant to Rule 16 of the Federal Rules of Civil Procedure. Counsel kindly complied agreeing that the public interest would best be served by an early end to the conflict. Both counsel also agreed to endeavor, with my assistance, to stipulate to a fair and equitable reapportionment of Illinois congressional districts in accordance with the Federal Constitutional principle of "one man, one vote".

Counsel have since conferred at length with each other and with the respective parties they represent and have conducted further pre-trial conferences before me, all with the knowledge and approval of the Illinois Supreme Court and the other judges on the panel of this court. Finally, on October 1, 1965, counsel appeared and advised that, although considerable agreement had been reached,

they were unable fully to resolve their differences. I, therefore, undertook the task of reconciling these differences in the light of "one man, one vote" requirements.

Congressional districts were apportioned in 1961 by the Illinois Legislature purportedly on the basis of population. (Ill. Rev.Stat., Ch. 46 § 156f.1) Although, as candidly admitted herein by the pleadings, all of the districts were not and are not substantially equal in population, some of the districts do come within constitutional requirements considering the permissible deviation from population norms. Moreover, all of the districts thus established by the Legislature, including those admittedly malapportioned, do constitute a nucleus around which constitutional congressional districts can be constructed without gross change.

Had the parties drawn the 24 Congressional districts allocated to Illinois around the Legislature's 1961 basic nucleus for each district, adding or subtracting territory where needed to equalize population, they would virtually have agreed upon a congressional map. Indeed, practically all the differences between the parties arose when either one or the other, for understandable though obvious political reasons, departed from the nucleus.

Much of the unresolved controversy between the parties concerns the suggested new boundaries for the present Nineteenth District. The distinguished Attorney General of Illinois has vigorously and ably contended that the new lines he suggests for that district should be adopted for the reason that they would best protect the incumbent Congressman who resides therein. Although I appreciate the Attorney General's motivation in strenuously seeking to enhance the reelection potential of a member of his party, I must and do in the interest of uniformity and the "one man, one vote" principle reject his well presented plea. Concern for incumbent Congressmen is a legitimate consideration with which I am most sympathetic when all other factors

are equal, however, the Attorney General's proposed lines for the Nineteenth District would radically depart from the nucleus and completely alter the character and composition of that district. The Attorney General's submitted map for the Nineteenth District seriously deforms and disrupts neighboring districts in order to make the necessary population adjustments. Protection of incumbents cannot constitutionally extend further than adhering to the nucleus of existing districts, increasing or diminishing that basic area as necessary to arrive at a constitutional population figure.

The changes I find necessary do no violence to the nucleus of the Nineteenth District; the incumbent retains the entire area from which he was recently elected with the addition of sufficient contiguous area to conform to the population norm requirement. This I have done in conformity with the overall district nucleus and in a manner least affecting adjacent districts.

I have furthermore with the approval of the Illinois Supreme Court, after studying the maps of the parties and considering the areas of divergence, prepared a congressional reapportionment plan utilizing the nucleus of each existing congressional district and enlarging or decreasing it to comply with the "one man, one vote" principle. A copy of the said plan is appended hereto with maps, legal descriptions and population totals for proposed congressional districts according to the 1960 census.

It is my considered opinion that this plan is a just, equitable, and constitutional reapportionment of Illinois congressional districts; I also believe that the plan constitutes a fair compromise between the divergent proposals submitted by the parties. Accordingly, I hereby file this Memorandum herein and submit a copy thereof and its attached plan to the Illinois Supreme Court.

CASTLE, Circuit Judge, and DECKER, District Judge, concur herein.

## APPENDIX

### POPULATION DATA FOR DOWN-STATE CONGRESSIONAL DISTRICTS

| District Number | Population | Deviation from Average of 420,048 |
|---|---|---|
| 12 | 394,714 | —6.0% |
| 14 | 439,182 | +4.6% |
| 15 | 410,650 | —2.2% |
| 16 | 394,481 | —6.1% |
| 17 | 428,519 | +2.0% |
| 18 | 401,503 | —4.4% |
| 19 | 410,402 | —2.3% |
| 20 | 401,919 | —4.3% |
| 21 | 417,760 | —0.5% |
| 22 | 441,332 | +5.4% |
| 23 | 412,709 | —1.9% |
| 24 | 415,110 | —0.9% |

### LEGAL DESCRIPTIONS FOR DOWN-STATE CONGRESSIONAL DISTRICTS

*District 12:* The Counties of Lake and McHenry, and the Townships of Barrington and Hanover in Cook County.

*District 14:* DuPage County, and the Townships of DuPage, Joliet and Lockport in Will County.

*District 15:* The Counties of DeKalb, Grundy, Kane, Kendall, and LaSalle.

*District 16:* The Counties of Boone, Carroll, Jo Daviess, Lee, Ogle, Stephenson, and Winnebago.

*District 17:* The Counties of Ford, Iroquois, Kankakee, Livingston, McLean, and Vermilion, and all of Will County except for the Townships of DuPage, Joliet and Lockport.

*District 18:* The Counties of Bureau, Marshall, Mason, Menard, Peoria, Putnam, Stark, Tazewell, and Woodford.

*District 19:* The Counties of Fulton, Henderson, Henry, Knox, Mercer, Rock Island, Warren, and Whiteside.

*District 20:* The Counties of Adams, Brown, Calhoun, Cass, Greene, Hancock, Jersey, Morgan, McDonough, Pike, Sangamon, Schuyler and Scott.

*District 21:* The Counties of Alexander, Edwards, Franklin, Gallatin, Hamilton, Hardin, Jackson, Jefferson, Johnson, Massac, Monroe, Perry, Pope, Pulaski, Randolph, Saline, Union, Wabash, Washington, Wayne, White and Williamson.

*District 22:* The Counties of Champaign, Clark, Coles, Cumberland, DeWitt, Douglas, Edgar, Logan, Macon, Moultrie, and Piatt.

*District 23:* The Counties of Bond, Christian, Clay, Clinton, Crawford, Effingham, Fayette, Jasper, Lawrence, Macoupin, Marion, Montgomery, Richland, and Shelby and the following Townships in Madison County: Helvetia, Saline, Leef, New Douglas, Marine, Alhambra, Olive, Hamel. Omphghent, Moro, Foster, Alton, and Godfrey.

*District 24:* St. Clair County and all of Madison County except for the Townships of Helvetia, Saline, Leef, New Douglas, Marine, Alhambra, Olive, Hamel, Omphghent, Moro, Foster, Alton, and Godfrey.

CAMPBELL J., DOWNSTATE CONGRESSIONAL

## POPULATION DATA FOR COOK COUNTY AREA CONGRESSIONAL DISTRICTS

| District Number | Population | Deviation from Average of 420,048 |
|---|---|---|
| 1 | 409,195 | −2.6% |
| 2 | 425,454 | +1.3% |
| 3 | 429,267 | +2.2% |
| 4 | 415,838 | −1.0% |
| 5 | 401,862 | −4.3% |
| 6 | 420,109 | +0.1% |
| 7 | 416,712 | −0.8% |
| 8 | 451,527 | +7.5% |
| 9 | 451,042 | +7.4% |
| 10 | 433,935 | +3.2% |
| 11 | 450,884 | +7.3% |
| 13 | 407,052 | −3.1% |

## LEGAL DESCRIPTIONS FOR COOK COUNTY AREA CONGRESSIONAL DISTRICTS

*District 1:* The Second Ward, the Third Ward, the Sixth Ward, the Twentieth Ward, those parts of the Fourth Ward lying north of 46th Street and west of Cottage Grove Avenue, that part of the Eighth Ward lying north of 99th Street and west of Stony Island Avenue, and that part of the Twenty-first Ward lying north of 99th Street and east of Stewart Avenue, all in the City of Chicago.

*District 2:* The Fifth Ward, the Seventh Ward, the Ninth Ward, the Tenth Ward, that part of the Fourth Ward lying south of 46th Street and east of Cottage Grove Avenue, and those parts of the Eighth Ward lying east of Stony Island Avenue and south of 99th Street, in the City of Chicago; the township of Calumet and that part of Thornton township lying to the east and north of a line described as follows: Beginning at the northern boundary of Thornton township and its intersection with Lincoln Avenue, southeast on Lincoln Avenue to Irving Avenue, south on Irving Avenue to Sibley Boulevard, east on Sibley Boulevard to the Calumet Expressway, south on the Calumet Expressway to its intersection with 159th Street, east on 159th Street to its intersection with the Little Calumet River, south and east along the river to its intersection with the eastern boundary of Thornton township, in Cook County.

*District 3:* The Sixteenth Ward, the Seventeenth Ward, the Eighteenth Ward, the Nineteenth Ward, that part of the Thirteenth Ward lying south of 66th Street, and the Twenty-first Ward except that part lying north of 99th Street and east of Stewart Avenue, in the City of Chicago; and that part of Worth township lying within the village limits of Evergreen Park, in Cook County.

*District 4:* The Townships of Bloom, Bremen, Lemont, Orland, Palos and Rich, that portion of Lyons Township lying west of a line described as follows: Beginning at the intersection of the northern boundary of Lyons Township and Eberly Avenue, proceed south on Eberly Avenue to East Avenue, continue south on East Avenue as extended to Elm Street and continue south on Elm Street to its intersection with the southern boundary of Lyons Township, that portion of Thornton Township lying south and west of a line described as follows: Beginning at the northern boundary of Thornton township and its intersection with Lincoln Avenue, southeast on Lincoln Avenue to Irving Avenue, south on Irving Avenue to Sibley Boulevard, east on Sibley Boulevard to the Calumet Expressway, south on the Calumet Expressway to its intersection with 159th Street, east on 159th Street to its intersection with the Little Calumet River, south and east along the river to its intersection with the eastern boundary of Thornton township, and that part of Worth township lying outside of the village limits of Evergreen Park, all in Cook County.

*District 5:* The Twelfth Ward, the Fourteenth Ward, the Fifteenth Ward, that part of the Eleventh Ward lying south of 31st Street, that part of the Thirteenth Ward lying north of 66th Street, and that part of the Twenty-third Ward lying south of the Sanitary Drainage and Ship Canal, in the City of Chicago; the township of Stickney, and that part of Lyons township lying east of a

line described as follows: Beginning at the intersection of the southern township boundary and Elm Avenue, north along Elm Avenue as extended to East Avenue, north along East Avenue as extended to Eberly Avenue, north along Eberly Avenue to the northern township boundary.

*District 6:* The Twenty-fourth Ward, the Twenty-ninth Ward, the Thirtieth Ward, the Thirty-seventh Ward, that part of the Twenty-second Ward bounded by a line described as follows: Beginning at the intersection of Homan Avenue and Ogden Avenue, southwest on Ogden Avenue to its intersection with Drake Avenue, south on Drake Avenue to its intersection with Cermak Road, west on Cermak Road to its intersection with Central Park Avenue, south on Central Park Avenue as extended to its intersection with Pershing Road, west on Pershing Road to its intersection with Pulaski Road, north on Pulaski Road to its intersection with 19th Street, east on 19th Street to its intersection with Hamlin Avenue, north on Hamlin Avenue to its intersection with 18th Street, east on 18th Street to its intersection with Homan Avenue, south on Homan Avenue to the point of beginning at Ogden Avenue, and that part of the Twenty-third Ward lying north of the Sanitary Drainage and Ship Canal, in the City of Chicago; and the townships of Berwyn and Cicero, in Cook County.

*District 7:* The First Ward, the Twenty-fifth Ward, the Twenty-sixth Ward, the Twenty-seventh Ward, the Twenty-eighth Ward, that part of the Eleventh Ward lying north of 31st Street, and that part of the Twenty-second Ward bounded by a line described as follows: Beginning at the intersection of Marshall Boulevard as extended and Ogden Avenue, southwest on Ogden Avenue to its intersection with Drake Avenue, south on Drake Avenue to its intersection with Cermak Road, west on Cermak Road to its intersection with Central Park Avenue, south on Central Park Avenue as extended to its intersection with Pershing Road, east on Pershing Road to its

intersection with California Avenue, north on California Avenue to its intersection with 24th Boulevard, west on 24th Boulevard to its intersection with Marshall Boulevard, north on Marshall Boulevard as extended to the point of beginning at Ogden Avenue, all in the City of Chicago.

*District 8:* The Thirty-first Ward, the Thirty-second Ward, the Thirty-third Ward, the Thirty-fourth Ward, the Thirty-sixth Ward, the Thirty-fifth Ward, except that part lying north of Diversey Avenue and west of Pulaski Road, that part of the Thirty-ninth Ward lying south of Montrose Avenue and east of Tripp Avenue, that part of the Fortieth Ward lying south of the north branch of the Chicago River and east of Central Park Avenue and that part of the Forty-fourth Ward bounded by a line described as follows: Beginning at the intersection of the Chicago and Northwestern Railway right-of-way and Addison Street, east along Addison Street to its intersection with Southport Avenue, south along Southport Avenue to its intersection with Belmont Avenue, east along Belmont Avenue to its intersection with Racine Avenue, south along Racine Avenue to its intersection with Diversey Parkway, west along Diversey Parkway to its intersection with Southport Avenue, south along Southport Avenue to its intersection with Wrightwood Avenue, west along Wrightwood Avenue to its intersection with the Chicago and Northwestern Railway right-of-way, north along the Chicago and Northwestern Railway right-of-way to the point of beginning at Addison Street, all in the City of Chicago.

*District 9:* The Forty-second Ward, the Forty-third Ward, the Forty-sixth Ward, the Forty-eighth Ward, the Forty-ninth Ward, the Forty-fourth Ward, except that part bounded by a line described as follows: Beginning at the intersection of the Chicago and Northwestern Railway right-of-way and Addison Street, east along Addison Street to its intersection with Southport Avenue, south along Southport Avenue to its intersec-

tion with Belmont Avenue, east along Belmont Avenue to its intersection with Racine Avenue, south along Racine Avenue to its intersection with Diversey Parkway, west along Diversey Parkway to its intersection with Southport Avenue, south along Southport Avenue to its intersection with Wrightwood Avenue, west along Wrightwood Avenue to its intersection with the Chicago and Northwestern Railway right-of-way, north along the Chicago and Northwestern Railway right-of-way to the point of beginning at Addison Street, and that part of the Fiftieth Ward north of Devon Avenue, all in the City of Chicago.

*District 10:* That part of the Thirty-eighth Ward in the City of Chicago lying to the west of the Des Plaines River in Cook County and in DuPage County; the townships of Maine, Oak Park, Proviso, River Forest and Riverside, that part of Leyden township lying to the west of a line described as follows: Beginning at the southern boundary of Leyden township and its intersection with Harlem Avenue, north on Harlem Avenue to Wellington Avenue, west on Wellington Avenue to Oriole Avenue, north on Oriole Avenue to Belmont Avenue, west on Belmont Avenue to its intersection with the Des Plaines River, north along the river to its intersection with Higgins Road, southeast on Higgins Road to Cumberland Avenue, north on Cumberland Avenue to its intersection with the southern boundary of Maine township, and that part of Norwood Park township lying to the north of Higgins Road, in Cook County.

*District 11:* The Forty-first Ward, the Forty-fifth Ward, the Forty-seventh Ward, that part of the Thirty-fifth Ward lying north of Diversey Avenue and west of Pulaski Road, that part of the Thirty-eighth Ward lying east of the Des Plaines River, the Thirty-ninth Ward except that part lying south of Montrose Avenue and east of Tripp Avenue, the Fortieth Ward except that part lying south of the north branch of the Chicago River and east of Central Park Avenue, and that part of the Fiftieth Ward lying south of Devon Avenue, in the City of Chicago; that part of Leyden township lying to the east of a line described as follows: Beginning at the intersection of Harlem Avenue and North Avenue, north on Harlem Avenue to its intersection with Wellington Avenue, west on Wellington Avenue to its intersection with Oriole Avenue, north on Oriole Avenue to its intersection with Belmont Avenue, west on Belmont Avenue to its intersection with the Des Plaines River, north along the Des Plaines River to its intersection with Higgins Road, southeast on Higgins Road to its intersection with Cumberland Avenue, north on Cumberland Avenue to its intersection with Devon Avenue, being the southern boundary of Maine township, and that part of Norwood Park township lying south of Higgins Road, in Cook County.

*District 13:* The City of Evanston, the townships of Elk Grove, New Trier, Niles, Northfield, Palatine, Schaumberg, and Wheeling, all in Cook County.

❶ 409,195
❷ 425,454
❸ 429,267
❹ 415,838
❺ 401,862
❻ 420,109
❼ 416,712
❽ 451,527
❾ 451,042
❿ 433,935
⓫ 450,884
⓭ 407,052

CAMPBELL J,
COOK COUNTY
CONGRESSIONAL

## ORDER

Pursuant to the opinion of the Illinois Supreme Court in People ex rel. Scott et al. v. Kerner et al., 211 N.E.2d 736, dated September 10, 1965 the two opposing factions of the Illinois State Electoral Board were afforded the opportunity to confer with each other in an attempt to reconcile their conflicting views and present an agreed plan for a valid reapportionment of Illinois congressional districts.

Thereafter this Court (per Campbell, C. J.), with the knowledge and approval of the Supreme Court of Illinois, con-

ducted numerous pretrial conferences in an effort to arrive at an agreement among the members of the State of Electoral Board as to a constitutionally valid congressional reapportionment plan. On October 1, 1965 counsel appeared and advised that, although considerable agreement had been reached, they were unable fully to resolve their differences.

The pretrial conferences culminated in the entry of a Pretrial Memorandum on October 13, 1965 in this cause, attaching and incorporating a suggested congressional reapportionment plan (including maps, legal descriptions and population data). The said reapportionment plan was based upon the areas of agreement reached by the parties; district boundaries were drawn by the Court in the instances where the parties could not agree. The Pretrial Memorandum was concurred in by all the members of this Court, and was transmitted forthwith to the Clerk of the Supreme Court of Illinois.

On November 19, 1965 the Supreme Court of Illinois issued its opinion and decision in People ex rel. Scott et al. v. Kerner et al., supra, approving and adopting the suggested congressional reapportionment plan attached to and incorporated in this Court's October 13, 1965 Pretrial Memorandum. The Clerk of the Supreme Court of Illinois has now transmitted that Court's opinion and the accompanying reapportionment plan to the Clerk of this Court and it has been filed in this cause.

Pursuant to the Pretrial Memorandum of October 13, 1965, IT IS HEREBY ORDERED that a rule be and the same is hereby entered upon all parties herein to show cause, if any, and in writing within five (5) days as to why the congressional reapportionment plan attached to the November 19, 1965 Opinion of the Supreme Court of Illinois is not constitutional and to further show cause, if any, as to why this Court should not now enter a final judgment finding said plan constitutional.

### JUDGMENT

 Pursuant to the rule entered herein on November 29, 1965, the Court having received no further suggestions of the parties hereto now finds that the congressional reapportionment plan embodied in this Court's Pretrial Memorandum of October 13, 1965 (subsequently approved and adopted by the Supreme Court of Illinois on November 29, 1965), is in compliance with the federal constitutional principle of "one man-one vote". (Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481). This Court accordingly finds that approval of the said provisional reapportionment plan will fully comply with the Federal Constitution and will dispose of this action upon its merits.

Due notice heretofore having been given to all parties and all parties having been heard upon said plan, it is hereby ordered, adjudged and decreed that the Illinois congressional reapportionment plan attached to and incorporated in this Court's Pretrial Memorandum of October 13, 1965, as approved and adopted by the Supreme Court of Illinois on November 19, 1965, be and the same is hereby declared to be in accordance with the federal law, and the same is hereby also declared to be the congressional map for the state of Illinois for the election of Illinois congressmen in the United States House of Representatives in 1966 and thereafter, until Illinois congressional districts are reapportioned in accordance with law.